[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: HUSBAND'S MOTION FOR CONTEMPT
The parties were married on March 2, 1983. The dissolution of marriage action was commenced on December 1, 1983 and judgment finally entered on September 15, 1988.
The judgment of dissolution provided, inter alia, that the husband pay $200.00 weekly support for each of the two minor children and $1.00 yearly alimony, that the husband pay the wife $160,000.00 in exchange for her interest in the marital residence and that the wife shall have sole custody of the two minor children with rights of supervised visitation in the husband.
As of December 7, 1990, the husband was found to be 88 weeks in arrears on support payments in the amount of $35,600.00. He was ordered incarcerated unless $7,500.00 was paid to the plaintiff within two weeks. On March 22, 1991, a second court order entered as of December 7, 1990, finding a child support arrearage of $30,000.00. The marital residence was ordered sold with the wife to receive $70,000.00, $40,000.00 of which represented child support for the next six years and $30,000.00 was in satisfaction of the then existing arrearage. The wife agreed to return her engagement ring and waived further alimony. The next supervised visitation in Arizona was ordered for the weekend of April 26, 1991 with alternate months thereafter from 6:00 p.m. Friday until 1:00 p.m. on Sunday.
The husband's motion for contempt alleges that the wife failed to comply with the court orders by denying the husband visitation after the husband had made arrangements and purchased non-refundable air tickets to Arizona for said visit and that she also failed to return the original engagement ring but instead returned the ring with a false diamond substituted in it. CT Page 5308
The plaintiff wife denied the allegations that she failed to comply with court orders for visitation and testified that she telephoned the husband to reschedule the visitation for a June date and that the husband never appeared and should have transferred his airline tickets to another date.
The court finds that the wife did not make a bona fide good faith effort to consumate the visitation which was scheduled for April 26, 1991. The credible evidence is that the wife left a recorded telephone message for the husband on or about April 25, 1991 advising him not to come to Arizona for the visit. The husband testified that the air line ticket cost $248.00 which amount was non-refundable. The court finds that the plaintiff wife should reimburse the husband for the $248.00 airplane ticket but that her conduct concerning the visitation does not rise to the level of contempt. However, she is ordered to make a good faith effort concerning future visitations as may be scheduled in accordance with the existing court orders.
The husband testified that he purchased the engagement ring in question from a private individual in New Jersey for $5,000.00 in 1983 and thereafter had it appraised for $9,000.00. His expert testified that the ring would be worth somewhere between $12,750.00 at wholesale and $25,500.00 at retail on today's market and that the returned ring was worth only $400.00. The husband claimed to have kept the ring constantly insured for $9,000.00 on his homeowners policy.
The wife related that she received the ring from the husband in 1983 but had not worn it since the dissolution in 1988. She stated that she had readily agreed to return the ring as it had no value to her. She categorically denied changing the stone and steadfastly maintained that she had returned the very same ring with the very same stone in the same condition as she had received it from the husband in 1983. Each of the parties testified during the brief hearing. The wife accused the husband of having been charged and convicted of insurance fraud in 1989. The husband denied the end result of the incident but did not deny that the incident had in fact occurred.
In the ordinary civil case a party satisfies his burden of proof if the evidence considered fairly and impartially induces in the mind of the trier a reasonable belief that it is more probable than otherwise that the fact or issue is true. This burden is sometimes expressed as "proof by a fair preponderance of the evidence," but such preponderance does not refer to the number of witnesses but rather the evidence that is superior and more likely to be in accord with the facts. It is the better or CT Page 5309 weightier evidence. The quality of the evidence controls, not the quantity. Where the evidence is equally balanced or in equipoise, then the proponent has not met his burden of persuasion. Further, a party does not meet his burden merely because his evidence is uncontested or uncontroverted because the trier, as the judge of credibility, may believe or disbelieve any evidence presented.
The evidence clearly showed that both parties had the opportunity to change the stone in the ring if in fact it was changed. The court has carefully considered all of the evidence presented by the opposing parties. The court has further observed the witnesses as they testified and has noted their demeanor, expressions, interest in the matter, bias, candor, sincerity and the other indices of truthfulness and credibility.
Based upon all of the foregoing, the court finds that the husband has not sustained his requisite burden of proof or credibility in connection with his claims concerning the switching of stones in the engagement ring.
This finding is fortified by a review of the history of this case, an examination of the entire file and the trial court's decision of September 14, 1988 which states in part as follows: on page 2, "what was significant about that withdrawal was that funds of the defendant amounting to some $400,000.00 which had been frozen by court order were released, and immediately thereafter the defendant transferred those funds out of state;" on page 3, "again the action of the defendant, following his vacating the home, is significant. He went for a blood test on January 22, three days after he left the marital home, in an effort to determine whether or not he was the father of both boys, David and Michael. Following a lengthy paternity hearing in which both the boys and the defendant under went blood tests, his claims were not established. In fact, the basis for them appears to have been completely fabricated since he said he relied on what another person told him and that other person testified that he never told him anything of the kind;" on page 4, "he has underestimated his income on a prior occasion when court orders were pending for support or alimony or both;" and on page 5, "In addition, the defendant's testimony suggested a singular lack of credibility. He filed false deductions on his income tax returns . . . he also claimed business expenses as being non-reimbursed when they were reimbursed . . . he also originally had claimed that he left his last position voluntarily when in fact he was let go."
The court orders that the wife pay the husband $248.00 as reimbursement for his airplane ticket and that she cooperate CT Page 5310 concerning future visitations. The court further finds for the wife on the issues relating to the engagement ring. The husband's Motion For Contempt is denied.
BALLEN, JUDGE